## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

IRMA ROSAS,

      Plaintiff,

      v.

BOARD OF EDUCATION OF THE
CITY OF CHICAGO, *et al.*,

      Defendants.

Case No. 19-CV-02778

Judge John Robert Blakey

## <u>MEMORANDUM OPINION AND ORDER</u>

In a Fourth Amended and Supplemental Complaint, [166], Plaintiff Irma Rosas sues the Board of Education of the City of Chicago ("BOE") for race/national origin discrimination and retaliation in violation of Titles VI and VII of the Civil Rights Act of 1964 (Counts I–III) and discrimination in violation of Titles I and II of the American with Disabilities Act ("ADA") (Count VIII). [166]. She also brings a Title VII discrimination claim against Chicago Teachers Union ("CTU") (Count IV) and 42 U.S.C. § 1983 Fourteenth Amendment equal protection claims against two school administrators, Evelyn Randle-Robbins and Sylvia Orozco-Garcia (Counts V–VII). *Id.* Defendants CTU, Randle-Robbins and Orozco-Garcia have moved to dismiss the claims against them, [168], [176], while BOE moved to dismiss Counts III and VIII but answered Counts I and II, asserting eight affirmative defenses, [176], [184]. Plaintiff moved to strike four of BOE's affirmative defenses, [186]. For the reasons explained below, the Court denies CTU's motion to dismiss [168], and grants in part,

and denies in part, the joint motion to dismiss by BOE, Randle-Robbins, and Orozco-Garcia, [176].  It also grants in part Plaintiff's motion to strike [184].

## I.      Factual Background[1]

On June 4, 2018, Chicago Public Schools ("CPS") hired Plaintiff as a bilingual teacher at Arnold Mireles School ("Mireles").  [166] ¶ 3.  Defendant Board of Education of the City of Chicago ("BOE") manages and oversees CPS.  *Id.* ¶ 22.  For the 2018–2019 school year, Mireles assigned Plaintiff to a kindergarten class with many native-Spanish speaking students.  *Id.* ¶¶ 4, 9; [166-1].  The classroom conditions "were deplorable, with moisture infiltration resulting in mold and rodent issues" and, in Plaintiff's view, Mireles' bilingual education program violated legal requirements.  [166] ¶¶ 5–8.  Mireles' principal, Defendant Randle-Robbins, also harassed Plaintiff and treated her harshly.  *Id.*  ¶¶ 5–9.  This included imposing teaching requirements on Plaintiff that she did not impose on a non-Hispanic kindergarten teacher who taught English-speaking students and giving the non-Hispanic teacher instructional materials and supplies that she refused to give Plaintiff.  *Id.*

On September 16, 2018, Plaintiff sent a lengthy email to U.S. Department of Education Secretary Betsy DeVos, Illinois State Board of Education's Superintendent Tony Smith, and CPS CEO Janet Jackson, complaining that: (1) Mireles (and CPS) provided inadequate education to native-Spanish speaking students, had an inadequate Special Education Program, and had unsafe classrooms with moldy

---

[1] The Court draws the facts from Plaintiff's Fourth Amended and Supplemental Complaint (hereinafter, "Complaint"), [166], which it takes as true for purposes of Defendants' motions to dismiss.

ceilings, asbestos, rodent droppings and non-functioning heating systems; (2) Randle-Robbins demanded Plaintiff teach in a manner that violated legal and policy requirements for bilingual teaching; and (3) Randle-Robbins repeatedly harassed her. [166] ¶¶ 5–8; [166-1].

Throughout fall 2018, Plaintiff remained vocal about these issues. [166] ¶ 27. When she persisted in her criticisms and complaints, she "was scrutinized and criticized" and allegedly subjected to a "hostile workplace" by Randle-Robbins, including increased class observation and poor reviews. *Id.* ¶¶ 10, 29–32.

At Plaintiff's request and on her behalf, CTU filed a grievance on October 29, 2018 alleging that CPS/Mireles failed to "follow applicable law regarding instruction of bi-lingual students" (Grievance 1), which Randle-Robbins received on November 5, 2018. *Id* ¶¶ 24, 47. Plaintiff also asked CTU to file a grievance on November 26, 2018 about the building conditions (Grievance 2). *Id.* ¶ 47. On December 14, 2018, she also filed a charge against CPS with the Illinois Department of Human Rights ("IDHR") claiming race discrimination. [166-2].

Randle-Robbins' harsh scrutiny and harassment eventually made Plaintiff ill, and Plaintiff took a medical leave of absence from February 4 to May 22, 2019. [166] ¶ 11. While on leave, Plaintiff filed this lawsuit, *pro se*, alleging discrimination and retaliation claims against the BOE and its CEO. [1]. When Plaintiff returned from leave on May 22, 2019, Randle-Robbins "non-renewed" Plaintiff's teaching contract. [166] ¶ 61. In response, Plaintiff filed another charge of discrimination with IDHR, this time against CTU for allegedly discriminating and retaliating against her by

3

failing to adequately represent her against CPS. [166-2]. She also amended her lawsuit to add claims against CTU and others for discrimination and retaliation in violation of Titles VI and VII of the Civil Rights Act, breach of her collective bargaining agreement, and breach of CTU's duty of fair representation, among other claims. [17].

Following her "non-renewal" at Mireles, Plaintiff took a teaching position at another CPS school, Calmeca Academy of Fine Arts & Dual Language ("Calmeca"). [166] ¶¶ 12, 63. According to Plaintiff, Calmeca also did not give Plaintiff adequate resources, failed to adhere to legal and policy requirements for bilingual education and many teachers lacked proper credentials "for the work they were doing or positions that they held." *Id.* ¶¶ 13, 64–65. When Plaintiff complained about these issues to Calmeca's principal (Defendant Sylvia Orozco-Garcia), Plaintiff "was scrutinized via interaction with a student with behavioral issues" and Orozco-Garcia allowed the student's father to intimidate and bully Plaintiff. *Id.* ¶¶ 66–67. Plaintiff alleges that Orozco-Garcia also stopped responding to Plaintiff's written questions and would not participate in Plaintiff's meetings with parents to discuss report cards. *Id.*

Further, Plaintiff alleges that, in retaliation for complaining, Orozco-Garcia falsely reported to BOE on November 25, 2019 that Plaintiff sexually assaulted a male student. *Id.* ¶ 16. She alleges that BOE then conducted a "sham investigation" from November 2019 through April 2021, during which it: (1) investigated and spoke with students' parents prior to holding a hearing with Plaintiff; (2) allowed parents

4

to view Plaintiff's disciplinary personnel file to embarrass Plaintiff and reward parents for participating in the sham investigation; (3) did not notify Plaintiff that she could compel witnesses, elicit testimony, or cross examine witnesses at a hearing; and (4) "falsely charged Plaintiff with unlawful touching, yelling at students, and insubordination." [166] ¶¶ 16–19. At some point, Plaintiff asked CTU to file a grievance regarding this "sham investigation" (Grievance 3), but CTU "did not actively proceed with" this new grievance. *Id.*

Next, at some point (although the Complaint does not say when), Plaintiff took a medical leave from Calmeca for depression. *Id.* ¶¶ 76–78. She had until March 19, 2020 to submit return-to-work paperwork, yet Orozco-Garcia laid her off from Calmeca on March 3, 2020, leaving her to find another position in CPS or face termination. *Id.*

On March 10, 2020, Plaintiff's doctor advised BOE that Plaintiff had severe depression and would need two days off per month. *Id.* ¶ 78. Rather than reasonably accommodate Plaintiff's severe depression and allow her to find another position, BOE "terminated her employment" in April or May 2020 for "failure to return from medical leave." *Id.* ¶¶ 70, 79. At some point, Plaintiff asked CTU to file a grievance on her behalf regarding her disability coverage (Grievance 4), but CTU did not "take any action." *Id.* ¶ 48.

Finally, "unbeknownst to Plaintiff" and despite her termination, BOE continued its "sham investigation" into the sexual abuse allegations and held a final hearing on February 18, 2021. *Id.* ¶ 70. The Complaint suggests that Plaintiff

attended the February hearing but that she did not "contest the hearing" because CTU failed to explain to her its possible implications. *Id.* ¶¶ 46, 70. Following the hearing, BOE made an "official termination decision" on March 24, 2021, put her on a "do-not-hire" list, and falsely advised Illinois State Board of Education that it terminated Plaintiff for an "indicted finding of child abuse."[2] *Id.* ¶¶ 20, 37.

On September 8, 2021, Plaintiff filed additional IDHR charges against CTU and CPS. [166-3]; [166-4]. Still proceeding *pro se*, she also further amended her complaint twice [51], [90].

## A. Procedural History

As set out above, Plaintiff filed this lawsuit *pro se* in 2019 and amended her complaint multiple times to add parties and claims as events unfolded. While Plaintiff remained *pro se,* Defendants moved to dismiss Plaintiff's third amended complaint, [110], [112], [113], [115]. The Court dismissed many claims, including those against CTU, but allowed Plaintiff to proceed on her Title VI discrimination and retaliation claims against BOE. [139]. It also recruited an attorney for Plaintiff and gave Plaintiff a final chance to amend her complaint, [139], [145].

Plaintiff's appointed counsel filed a fourth amended complaint, [155], and then a "Fourth Supplemental and Amended Complaint," [166], which stands as the final and operative complaint. It asserts: (1) Titles VI and VII race/national origin discrimination and retaliation claims (Counts I–III) and an ADA discrimination claim (Count VIII) against BOE; (2) a Title VII race/national origin discrimination claim

---

[2] The Complaint uses the term "indicted" but it does not allege that Plaintiff ever faced criminal charges.

(Count IV) against CTU; (3) 42 U.S.C. § 1983 Fourteenth Amendment equal protection claims against Randle-Robbins and Orozco-Garcia for discrimination and retaliation (Counts V and VII); and (4) a § 1983 Fourteenth Amendment equal protection "class of one" claim against Orozco-Garcia (Count VI). [166]. BOE answered the Title VI and Title VII discrimination claims (Counts I and II), [184], but the Defendants moved to dismiss all other claims, [168], [176]. Plaintiff moved to strike four of BOE's affirmative defenses. [186].

## II.  Motions to Dismiss, [168], [176]

To survive a motion to dismiss under Rule 12(b)(6), "the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raises a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018). Importantly, a motion to dismiss tests the sufficiency of the complaint, not the merits of the case. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). A court must accept as true all well-pled factual allegations, but it need not accept mere legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### A.  Title VII Retaliation Against BOE (Count III)

BOE moves to dismiss Plaintiff's Title VII retaliation claim, arguing that the Complaint does not allege a protected activity or plausibly link any alleged complaint by Plaintiff to an adverse action she suffered. [177] at 5.

To plead a viable Title VII retaliation claim, an employee must "allege that she engaged in statutorily protected activity and was subjected to an adverse employment

action as a result." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014). To engage in protected activity means to take "some step in opposition to a form of discrimination that the statute prohibits." *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 501 (7th Cir. 2017) (quoting *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 631 (7th Cir. 2011)). A complaint "alleging illegal retaliation on account of protected conduct must provide some specific description of that conduct beyond the mere fact that it is protected." *E.E.O.C. v. Concentra Health Srvcs., Inc.*, 496 F.3d 773, 781 (7th Cir. 2007).

Here, the Complaint alleges that BOE employees retaliated against Plaintiff after she: (1) wrote her September 2018 email to Secretary DeVos; (2) filed her November 5, 2018 grievance (Grievance 1) about CPS/Mireles' failure to "follow applicable law regarding instruction of bi-lingual students"; and (3) complained to Orozco-Garcia in 2019 while at Calmeca. *Id.* ¶¶ 24, 41, 58, 73. She insists these all qualify as "protected activity." [189] at 2–4. BOE disagrees, arguing that none of them qualify because none included complaints about Title VII discrimination. [177] at 5–6. Instead, it argues, Plaintiff only complained about Mireles' bilingual program and classroom conditions.

BOE's argument has merit with respect to Grievance 1 and the complaints to Orozco-Garcia. But it fails as to the 2018 email to DeVos. That is, as BOE points out, Grievance 1 merely complained that CPS/Mireles failed to "follow applicable law regarding instruction of bi-lingual students." [166] ¶¶ 24, 47. Even if Plaintiff's grievance implies discrimination against her native-Spanish speaking students,

protected activity must relate to "an unlawful *employment* practice that is prohibited by" Title VII. *Hatcher v. Bd. of Trustees of S. Ill. Univ.*, 829 F.3d 531, 537 (7th Cir. 2016) (emphasis in original) (affirming district court's dismissal of a retaliation claim based on a professor's complaints that a student was sexually harassed), *overruled on other grounds in Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). Thus, Grievance 1 does not plausibly constitute protected activity as alleged.

The same holds true for Plaintiff's complaints to Orozco-Garcia in 2019 about Calmeca's language program and insufficient resources. That is, even if informal complaints to an administrator can qualify as protected activity, the Complaint does not allege any facts to suggest that Plaintiff's complaints to Orozco-Garcia related to "an unlawful *employment* practice that is prohibited by" Title VII. *Hatcher*, 829 F.3d at 537.

That leaves the September 2018 email to Secretary DeVos. BOE's challenge here, however, fails at this stage of the proceedings. While Plaintiff's generalized complaints in the email about Mireles' bilingual program and building conditions might not plausibly constitute protected activity, the email also details numerous ways that Randle-Robbins harassed Plaintiff and singled her out compared to other teachers. [166-1]. True, "complaining in general terms of discrimination or harassment, without indicting a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). But given the email's content and context, Plaintiff's harassment complaints suffice to raise a plausible inference that

Plaintiff "rooted her complaint" of harassment to her Hispanic-Mexican and Chicana identity, "which is what is required." *Orton-Bell v. Ind.*, 759 F.3d 768, 776 (7th Cir. 2014).[3] Accordingly, the email to DeVos plausibly constitutes protected activity.[4]

Next, BOE argues that the Complaint fails to plausibly connect any protected activity to an adverse action Plaintiff suffered. [177] at 6–7. It argues that Plaintiff cannot plausibly connect her "non-renewal" at Mireles in 2019 to any protected activity in 2018, since courts have held that even "one-month is insufficient to establish causation." *Id* (citing *Silk v. Bd. of Trustees*, 795 F.3d 698, 710 (7th Cir. 2015); *Milligan v. Bd. of Trustees of S. Ill. Univ.*, 686 F.3d 378, 390 (7th Cir. 2012); *Kidwell v. Eisenhauer*, 679 F.3d 957, 967 (7th Cir. 2012)). It also insists that her March 2020 "layoff" from Calmeca, April 2020 termination from CPS, and the "sham investigation" came too long after Plaintiff's 2018 complaints at Mireles to plausibly suggest a connection to any protected activity in 2018. *Id*.

---

[3] In addition, even though BOE insists now that September 2018 email to Secretary DeVos does not qualify as protected activity, BOE waived essentially this argument as a basis for dismissal under 12(b)(6), because it previously conceded that the email "qualifies as protected activity for purposes of the retaliation claim." [139] at 30. Specifically, BOE conceded this fact for Plaintiff's Title VI retaliation claim (Plaintiff's last *pro se* complaint did not assert a Title VII claim), and all agreed that "Title VI discrimination and retaliation claims 'share an analytical framework' with and should be analyzed in a similar manner to Title VII claims." *Id*. at 29 (quoting *Marcial v. Rush Univ. Med. Ctr.*, No. 16-cv-6109, 2019 WL 3943667, at *6 (N.D. Ill. Aug. 21, 2019)). Having expressly waived the argument in its prior motion to dismiss, BOE may not raise it in a successive motion to dismiss.

[4] In her response, Plaintiff also argues that she engaged in protected activity when she filed the December 14, 2018 IDHR/EEOC charge against BOE and this lawsuit in 2019. [189] at 3. While both likely constitute protected activity, *see* [1], [166-2] at 2, the Complaint does not allege that either one caused the alleged retaliation. Plaintiff may not amend her Complaint through her response brief. *Pirelli Armstrong Tire Corp Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436 (7th Cir. 2011) (noting the "axiomatic rule that a plaintiff may not amend his complaint in his response brief."). Nonetheless, these activities, which focused on Plaintiff's experience at Mireles, do support the plausible inference that Plaintiff's email to DeVos constitutes protected activity.

Again, BOE's argument fails at this early stage. As BOE correctly notes, an "inference of causation weakens as the time between the protected expression and the adverse action increases, and then 'additional proof of a causal nexus is necessary.'" *Carlson*, 758 F.3d at 828 (quoting *Oest v. Ill. Dept. of Corrections*, 240 F.3d 605, 616 (7th Cir. 2001)). Importantly, however, *Carlson* emphasizes that a court should not make premature determinations based on timing alone, because "facts and circumstances of each case necessarily must be evaluated to determine whether an interval is too long to permit a jury to determine rationally that an adverse employment action is linked to an employee's earlier complaint." *Id.* at 829. In *Carlson*, the plaintiff alleged that her protected activity prompted an "ongoing campaign of retaliation" that resulted in multiple adverse employment actions. *Id*. The district court, on a motion to dismiss, held that the Complaint failed to allege a plausible causal link. *Id*. The Seventh Circuit reversed, holding that the district court's dismissal rested on premature "timing" determinations that lost "sight of the bigger picture." *Id*.

So too here, at least as to Plaintiff's "non-renewal" at Mireles. Namely, Plaintiff alleges that, after her complaints at Mireles, Randle-Robbins retaliated against her, ultimately laying her off in Spring 2019. These allegations, read as a whole and in the light most favorable to Plaintiff, plausibly suggest an "ongoing pattern of retaliation" by Randle-Robbins that culminated in "non-renewal." *Id*.

Plaintiff's alleged experiences at Calmeca prove more complicated. First, the Complaint alleges that Orozco-Garcia retaliated against Plaintiff because of "her

complaints about Calmeca's language programs." [189] at 5 (quoting [166] ¶¶ 73, 74). As discussed above, however, the Complaint does not plausibly allege that Plaintiff's complaints to Orozco-Garcia about Calmeca's language program qualify as protected activity. Thus, even if Orozco-Garcia retaliated against Plaintiff for those complaints, it does not qualify as actionable Title VII retaliation. Second, the Complaint alleges that, Orozco-Garcia also "retaliated against Plaintiff because of Plaintiff's complaints at Mireles." *Id*. Yet, the Complaint alleges no facts to suggest that Orozco-Garcia even knew about Plaintiff's complaints a year before about a different school and different principal. The problem, therefore, does not just turn on timing, it turns on plausibility. Thus, the Complaint does not plausibly allege any Title VII retaliation by Orozco-Garcia as an individual.

Yet, the Complaint also alleges that in retaliation for Plaintiff's protected activity at Mireles, BOE responded to Orozco-Garcia's sexual assault allegations by pursuing a sham investigation and amassing "evidence to support a termination of Plaintiff." [166] ¶ 41. In other words, interpreting the Complaint in the light most favorable to Plaintiff, it alleges that BOE only pursued Orozco-Garcia's allegations and terminated Plaintiff because it wanted to retaliate against Plaintiff for her protected activity at Mireles. While the Complaint does not allege facts to suggest that Orozco-Garcia knew of Plaintiff's complaints at Mireles, it plausibly alleges that BOE did since she sent her DeVos email to BOE, too.

Of course, discovery may reveal that Plaintiff cannot establish a causal connection between any protected activity and an adverse action she faced. In fact,

12

as the Court noted in its prior motion to dismiss, Plaintiff's more detailed *pro se* complaints suggest numerous non-discriminatory and non-retaliatory reasons for some of the adverse actions she faced. [139] at 31 ("The extensive facts" in the third amended complaint "suggest other potential motivation for the Board's and its employees' actions, such as Plaintiff not meeting the Board's expectations due to her frequent absences and failure to meet deadlines."). But Plaintiff need not plead all the facts necessary to survive summary judgment. *See Carlson*, 758 F.3d at 828 (holding "the district court once again seemed to require evidence at the pleading stage" and "relied exclusively on a summary judgment case" in dismissing the Title VII retaliation claim). The Complaint sufficiently alleges a Title VII retaliation claim against BOE.

## B. Claims Against Individual Defendants Randle-Robbins and Orozco-Garcia

Plaintiff also asserts § 1983 claims against Randle-Robbins and Orozco-Garcia for discriminating and retaliating against her in violation of her Fourteenth Amendment equal protection rights. *See* [166] at 10–14. Further, against Orozco-Garcia, she asserts a § 1983 Fourteenth Amendment equal protection claim on a "class of one" theory. *Id*.

Randle-Robbins and Orozco-Garcia move to dismiss all the claims, [177] at 7–11, and, in response, Plaintiff withdraws her class-of-one equal protection claim against Orozco-Garcia, [189] at 6. That leaves the § 1983 equal protection claims against Randle-Robbins and Orozco-Garcia for retaliation and discrimination.

### 1. Section 1983 Equal Protection Claim Based on Retaliation

Randle-Robbins and Orozco-Garcia argue that Plaintiff's § 1983 equal protection claim premised on retaliation fails as a matter of law because the Seventh Circuit does not recognize such a claim. [177] at 9. The Court agrees.

In *Boyd v. Illinois State Police*, the Seventh Circuit held that "the right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause." 384 F.3d 888, 898 (7th Cir. 2004). This remains so, the court held, even if protected activity such as complaining of sex discrimination prompted the retaliation. *Id.* It emphasized that "Congress would not have wanted a Title VII plaintiff to bypass the elaborate 'administrative procedures created by the statute (procedures as applicable to retaliation claims as to any other claims under Title VII), and go directly to court, through the illogical expedient of equating discrimination against a person for filing charges of sex discrimination to sex discrimination itself." *Id.*

To distinguish her claims from *Boyd*, Plaintiff relies upon *Locke v. Haessig*, 788 F.3d 662 (7th Cir. 2015). [189] at 6. In *Locke*, a male parolee whose parole officer sexually harassed him brought a § 1983 equal protection claim against the officer's supervisor for threatening to retaliate against the parolee for complaining. 788 F.3d at 664–65. The court held that *Boyd* did not bar the parolee's claim against the supervisor because he "is not asserting a general right to be free from retaliation" but instead claimed that the supervisor threatened to retaliate against him "because of his sex—because he was a man rather than a woman complaining of sexual harassment." *Id.* at 672.

14

Here, the Complaint alleges that Randle-Robbins "retaliated against Plaintiff" for sending the email complaint to Secretary DeVos," [166] ¶¶ 58–59, and that Orozco-Garcia "retaliated against Plaintiff because of Plaintiff's complaints filed as to Mireles and her complaints about Calmeca's language program," *id.* ¶ 73. Nowhere does Plaintiff allege that Randle-Robbins or Orozco-Garcia retaliated against Plaintiff *because of* her race or ethnicity—that is, she does not allege that they would not have retaliated against a Caucasian teacher who made similar complaints. Instead, Plaintiff alleges that they retaliated against her for complaining. Thus, *Boyd*, not *Locke*, controls and forecloses Plaintiff's § 1983 equal protection retaliation claims against both Defendants.[5]

Accordingly, the Court dismisses Plaintiff's § 1983 equal protection retaliation claims against both Defendants and it does so with prejudice. Nothing suggests that Plaintiff could overcome *Boyd* with additional allegations and Plaintiff has had ample opportunities to amend her complaint, including while represented.

### 2. Section 1983 Equal Protection Claim Based on Discrimination

#### a) Defendant Randle-Ribbons

Next, Randle-Robbins moves to dismiss the § 1983 equal protection claim against her based on alleged discrimination, arguing that the Complaint does not plausibly allege that she targeted Plaintiff because of her race. [177] at 8. She insists

---

[5]In the alternative, Plaintiff asks the Court for "revision of existing law." [189] at 6. The Court remains bound by the Seventh Circuit's "existing law" and has no power to revise it.

that, at most, the Complaint alleges "general racial bias" and such general allegations do not satisfy Rule 8 pleading standards. The Court disagrees.

In the Seventh Circuit, if "a plaintiff alleging illegal discrimination has clarified that it is on the basis of race, there is no further information that is both easy to provide and of clear critical importance to the complaint." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). This "minimal pleading standard for simple claims of race or sex discrimination" derives from *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998). In *Bennett*, a plaintiff alleged that a school district discriminated against him when it did not hire him for a teaching position. *Id.* The court found plaintiff's claim plausible, emphasizing that "'I was turned down for a job because of my race' is all a complaint has to say." *Id.* at 519. The court reasoned that requiring anything more would impose "a requirement of fact-pleading" that "leads to windy complaints and defeats the function of Rule 8." *Id.* at 518–19.[6] Although *Bennett* and *Tamayo* involved Title VII discrimination claims, the Seventh Circuit recently clarified that these holdings also apply to § 1983 equal protection claims based upon discrimination. *See Freeman v. Metro. Water Reclamation Dist. of Greater Chi.*, 927 F.3d 961, 965 (7th Cir. 2019) (applying the minimal pleading requirement to race discrimination claims under Title VII and § 1983).

Here, the § 1983 claim against Randle-Robbins meets this "minimal pleading standard." The Complaint alleges that Randle-Robbins failed to provide Plaintiff

---

[6] *Bennett* preceded *Twombly* and *Iqbal*, but the Seventh Circuit has repeatedly reaffirmed its holding as consistent with *Twombly* and *Iqbal*. *See, e.g., Concentra*, 496 F.3d at 776; *Tamayo*, 526 F.3d at 1084; *Freeman v. Metro. Water Reclamation Dist. of Greater Chi.*, 927 F.3d 961, 965 (7th Cir. 2019).

"adequate instructional materials" and "other resources and facilities" because of "her animus against Plaintiff and her Hispanic/Chicana heritage." [166] ¶ 60. She also alleges that Randle-Robbins provided these resources to other teachers not of Plaintiff's race, and that Randle-Robbins ultimately "non-renewed" Plaintiff's contract because of this animus. *Id.* ¶¶ 55, 60. The minimal pleading standard requires nothing more. The Complaint alleges a plausible § 1983 equal protection claim against Randle-Robbins for alleged discrimination.

In the alternative, Randle-Robbins moves to dismiss based upon qualified immunity. [177] at 10–11. Qualified immunity shields public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A court should resolve a qualified immunity defense "at the earliest possible stage in litigation," *Pearson*, 555 U.S. at 815, but a motion to dismiss sometimes fails to present "the most suitable procedural setting to determine whether an official is qualifiedly immune, because immunity may depend on particular facts that a plaintiff need not plead to state a claim," *Hanson v. LeVan*, 967 F.3d 584, 589 (7th Cir. 2020) (citing *Alvarado v. Litscher*, 267 F.3d 648, 651–52 (7th Cir. 2001)).

Randle-Robbins seeks qualified immunity because, according to her, "Plaintiff has simply not alleged any constitutional violations against" her because failing to renew a teaching contract "is not a constitutional violation." [177] at 11. This misconstrues the Complaint's allegations. True, Plaintiff does not have a

constitutional right to a teaching contract, but the constitution does protect her from discrimination on account of her race or ethnicity. The Complaint alleges that Randle-Robbins took various adverse actions against Plaintiff, including non-renewing her teaching contract, on account of Plaintiff's race and ethnicity. Randle-Robbins fails to explain how such alleged discrimination does not clearly violate established rights under the Fourteenth Amendment's Equal Protection Clause. Randle-Robbins' qualified immunity defense fails at this stage.

### b) Orozco-Garcia

Orozco-Garcia also argues that the § 1983 equal protection discrimination claim against her fails because the Complaint does not plausibly allege that she took any actions against Plaintiff on account of Plaintiff's race or ethnicity. [177] at 9–10. Plaintiff disagrees, pointing to the following allegations: (1) "Orozco-Garcia retaliated against Plaintiff because of Plaintiff's complaints filed as to Mireles and her complaints about Calmeca's language programs"; and (2) "Plaintiff's termination was caused and promoted by Orozco based on her animus toward Plaintiff." [189] at 5 (quoting [166] ¶¶ 73, 74).

Neither of these plausibly suggest that Orozco-Garcia discriminated against Plaintiff on account of her race and national origin. The first merely alleges "retaliation," (and not even Title VII retaliation, as previously discussed), and it does not suggest race/national origin discrimination. The second alleges that Orozco-Garcia harbored "animus" against Plaintiff, but it does not suggest racial or national origin animus. Nor does the Complaint allege any other facts sufficient to create that

inference. *See Tomanovich*, 457 F.3d at 663 ("complaining in general terms of discrimination or harassment, without indicting a connection to a protected class or providing facts sufficient to create that inference, is insufficient."). Plaintiff's pleading burden remains minimal, but her Complaint does not meet this burden as to Orozco-Garccia.

Accordingly, the Court dismisses the § 1983 discrimination claim against Orozco-Garcia for failure to state a claim. It also does so with prejudice because Plaintiff has exhausted her more-than ample opportunities to amend her claims, including while represented.

### C. Title VII Discrimination Claim Against CTU (Count IV)

Plaintiff also sues CTU for Title VII discrimination, alleging that, because Plaintiff "was Chicana/Hispanic and accused the BOE of discriminating against her and her Hispanic students," CTU did not pursue her four grievances or explain to her the possible ramifications of the February 2021 hearing on the sexual abuse allegations. [166] ¶¶ 43–51.

Title VII provides that a labor organization may not discriminate against a member "because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(c). Thus, a union may face liability "for discriminating against its members when performing union functions." *Johnson v. Int'l Longshoreman's Ass'n, Local 815 AFL-CIO*, 520 F. App'x 452, 454 (7th Cir. 2013) (unpublished); *see also Maalik v. Int'l Union of Elevator Constructors, Local 2*, 437 F.3d 650, 652 (7th Cir. 2006). A union's

agency function includes pursuing grievances on behalf of its members. *E.E.O.C. v. Pipefitters Ass'n Local Union 597*, 334 F.3d 656, 660 (7th Cir. 2003).

### 1.    Causal Link

In moving to dismiss, CTU first argues that the Complaint does not allege a plausible causal link between Plaintiff's race or national origin and any action CTU took or failed to take.  [169] at 3–6.  In support, Defendant cites *EEOC v. Concentra Health Services*, 496 F.3d 773, 776 (7th Cir. 2007), where, according to CTU, the court dismissed Title VII claims that failed to "specify what conduct" violated Title VII, [188] at 3.

Defendant's reliance on *Concentra* proves misplaced.  *Concentra* affirmed dismissal of a Title VII retaliation claim, not a Title VII discrimination claim, and it affirmed because the complaint failed to specify the protected act that caused the retaliation.  496 F.3d at 782.  In so holding, the court distinguished retaliation claims from discrimination claims, reiterating that claims for "employment discrimination on the basis of race, sex or some other factor" need only "allege the defendant's intent quite generally."  *Id.* at 781.  It further elaborated that "once a plaintiff alleging illegal discrimination has clarified that it is on the basis of her race, there is no further information that is both easy to provide and of clear critical importance to the claim." *Id.* at 782.  Here, the Complaint only asserts a Title VII discrimination claim against CTU and alleges that CTU discriminated against her on account of her race and national origin.   [169] at 3–6.   Thus, if anything, *Concentra* shows that the Complaint's allegations suffice.

20

In reply, [188] at 3, CTU also points to a recent unpublished decision, *Mir v. State Farm Mutual Automobile Insurance, Co*, 847 F. App'x 347, 350 (7th Cir. 2021), in which the court affirmed dismissal of an insured's claim that his insurer racially discriminated against him when it denied him uninsured motorist benefits. CTU argues that, pursuant to *Mir*, alleging a racial motive does not suffice. [188] at 3. *Mir*, however, involved a discrimination claim by an insured against his insurer, not an employment discrimination claim. Further, *Mir* did not overrule (or even mention) the Seventh Circuit's long-held view that, in the employment context, a complaint may plead "the defendant's intent quite generally." *Concentra*, 496 F.3d at 781. Plaintiff's Title VII discrimination claim against CTU meets the pleading requirement that applies in the employment context.

### 2. Exhaustion

Next, CTU argues that Plaintiff cannot maintain a Title VII discrimination claim based upon Grievance 3 (regarding the "sham investigation") or Grievance 4 (regarding her medical leave at Calmeca) because she failed to file a timely EEOC charge against CTU related to them. [169] at 6–8.

Before bringing a Title VII claim, a plaintiff must file an EEOC or IDHR charge within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see also Carlson v. Christian Bros. Servs.*, 840 F.3d 466, 467 (7th Cir. 2016) ("IDHR has a worksharing agreement with EEOC, whereby a charge filed with IDHR is automatically cross-filed with EEOC."). Any Title VII claim must be "like or reasonably related" to the charge raised in a prior EEOC/IDHR complaint. *Chaidez*

21

*v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). A claim qualifies as "reasonably related" if "there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

Whether Plaintiff timely filed an EEOC charge constitutes an affirmative defense, *Massey v. Helman*, 196 F.3d 727 (7th Cir. 1999), and a "plaintiff is not required to negate an affirmative defense in his or her complaint," *Stuart v. Local 727, Inc. Broth. Of Teamsters*, 771 F.3d 1014, 1018 (7th Cir. 2014). A court may dismiss a claim based upon an affirmative defense, however, if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2004)).

Here, Plaintiff filed IDHR charges against CTU on May 30, 2019 and September 8, 2021. *See* [166-2] at 4; [166-3] at 1. CTU argues that the 2019 IDHR charge came before Grievance 3 and 4, and thus cannot "reasonably relate" to them, and the September 8, 2021 IDHR charge came too late. [169] at 6–8.

CTU's exhaustion argument rests on timing, yet the Complaint does not allege when Plaintiff communicated with CTU about Grievances 3 and 4. Instead, to support its exhaustion argument, CTU attaches to its motion emails between it and Plaintiff about the two grievances and adds citations to the governing Collective Bargaining Agreement ("CBA") (which set out requirements for when CTU must file

22

grievances on behalf of its members). [169-1]. CTU argues that the Court may consider the emails on a motion to dismiss because "the grievances are referred to in plaintiff's complaint." [169] at 2, n.1. Not so. On a motion to dismiss pursuant to Rule 12(b)(6), a court may only consider documents outside the complaint if they "are referred to in the plaintiff's complaint and are central to" the claims. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). The Complaint here does not refer to the emails that CTU offers, and the exception does not apply just because the emails may relate to something referred to in the Complaint. Such an exception would swallow the rule, turning every Rule 12(b)(6) motion into one for summary judgment without the benefit of discovery. *See Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir. 1998) (holding that the narrow exception "is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment.").

Next, Defendant argues that the Court may consider the emails because they "are central to" Plaintiff's "claim that she exhausted her administrative remedies." [169] at 2 n.1. Plaintiff brings a Title VII claim, however, not a "claim that she exhausted her administrative remedies." Accordingly, CTU's argument fails.

The Court also declines to convert Defendant's motion to one for summary judgment so it may consider these emails. *See* Fed. R. Civ. P. 12(d). Although Plaintiff did not object, the parties' arguments confirm that the Court cannot resolve the exhaustion issue at this stage. For example, Plaintiff offers other emails suggesting that CTU asked her for additional time to address her grievances, [185-

23

1]; she also argues that she did not and could not know that CTU failed to pursue her grievances, [185] at 4–6. These arguments suggest that equitable tolling or estoppel might apply. *See Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chi. Med. Sch.*, 167 F.3d 1170, 1174 (7th Cir. 1999) (holding that EEOC requirements remain "subject to waiver, estoppel, and equitable tolling under appropriate circumstances."). Such theories rely on unresolved facts and require resolution at a later stage with the benefit of discovery. *See Lymon v. United Auto Workers Union, Local 2209*, 843 F. App'x 808 (7th Cir. 2021) (reversing a district court's dismissal of Title VII claims because it prematurely found that the claims were time-barred).

### D.   ADA Discrimination Claim Against BOE (Count VIII)

Finally, the Complaint brings a claim against BOE for violating Titles I and II of the ADA. *Id.* In support, it alleges that Plaintiff's doctor informed BOE on March 10, 2020 that she suffered from severe depression and needed two days off per month. In response to this notice, BOE failed to broach "the subject of reasonable accommodations" and instead "within less than two months" it "terminated her employment." [166] ¶ 78.

Title I of the ADA provides that a "covered entity" may not "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in

or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

First, BOE argues that Plaintiff cannot pursue a Title II ADA claim against it because Title II does not apply to employment decisions by state and local governments, citing *Brumfield v. City of Chicago,* 735 F.3d 619, 626–28 (7th Cir. 2013). [177] at 12. In response, Plaintiff claims that her "counsel was unable to find a precedential case in the 7th Circuit that disallows public employees to file ADA cases under Title II as a matter of law." [189] at 7 n.3. But Plaintiff ignores *Brumfield*, the case BOE cites. *Brumfield* states that Title II of the ADA "unambiguously does not apply to the employment decisions of state and local governments." 735 F.3d at 626–28. Plaintiff challenges an employment decision by BOE, a governmental entity. Accordingly, pursuant *Brumfield*, Plaintiff's claim based upon Title II of the ADA fails as a matter of law.

Next, as to Plaintiff's claim based upon Title I of the ADA, BOE argues that Plaintiff failed to exhaust her administrative remedies because BOE terminated her in Spring 2020, but she did not file an IDHR charge of ADA discrimination until September 8, 2021.[7] [177] at 12–13. As BOE notes, the ADA has adopted Title VII's EEOC 300-day exhaustion requirements. *See* 42 U.S.C. § 12117(a).

In response, Plaintiff acknowledges that BOE terminated her in Spring 2020, but insists that BOE made an "official termination decision" on March 24, 2021 after

---

[7] BOE asserts its timeliness argument pursuant to Rule 12(b)(1). The EEOC charge requirement, however, "is not a jurisdictional prerequisite to filing a federal lawsuit, but rather, is more akin to a statute of limitations." *Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chi. Med. Sch.,* 167 F.3d 1170, 1174 (7th Cir. 1999). Therefore, Rule 12(b)(6) governs. *Id.*

the sexual abuse hearing. [189] at 7–8. She argues that the 300 days began to run on March 24, 2021, making her EEOC charge timely.[8] *Id.*

Plaintiff's reliance on a March 24, 2021 "official termination" finds no support in the Complaint. Rather, in support of her ADA claim, the Complaint alleges that: (1) Plaintiff's doctor advised BOE on March 10, 2020 that she "suffered from Severe Depression and required 2 days per month of time off"; (2) "Defendant responded shortly thereafter by terminating Plaintiff"; and (3) Defendant BOE's "policy or practice on layoffs is to place the employee on a call-back" but "Plaintiff was on 'layoff' for a much shorter period of time than is usual before being terminated." [166] ¶¶ 78–80. These allegations clearly identify Plaintiff's Spring 2020 termination as the allegedly discriminatory act that violated the ADA. Nothing in the Complaint suggests that any aspect of the "sham investigation"—including the February 2021 sexual assault hearing or actions BOE allegedly took following it—related to her alleged disability. The Complaint's allegations establish that the 300-day charge requirement ran from her Spring 2020 termination, making her September 8, 2021 IDHR charge untimely.[9]

Alternatively, Plaintiff argues that the Court should apply equitable tolling because Plaintiff did not have a lawyer at that time and "understandably did not

---

[8] Plaintiff also argues that her ADA claim remains timely because the EEOC charge requirement does not apply to Title II ADA claims. [189] at 7. As discussed above, however, Plaintiff cannot pursue a Title II ADA claim.

[9] The Complaint does not specify exactly when BOE terminated her in Spring 2020, but alleges it came "less than two months" after March 10, 2020. [166] ¶ 79. Even interpreting this generously, she had to file an EEOC charge by Spring 2021.

discern this nuance of what and whether such a charge was required." [189] at 8. Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence" she is "unable to obtain vital information bearing on the existence of his claim." *Hentosh*, 167 F.3d at 1174 (quoting *Cada*, 920 F.2d at 451). Equitable tolling applies when a plaintiff lacks access to facts, however, not an understanding of the law. If every plaintiff could avoid timeliness requirements merely because they lack legal training, then timeliness would become a hollow requirement. Plaintiff offers nothing else to justify tolling.

As such, Plaintiff's ADA claim against BOE remains time-barred and the Court dismisses Count VIII with prejudice, since nothing suggests that Plaintiff could overcome the timeliness issue.[10]

## III. Motion to Strike BOE's Affirmative Defenses [186]

BOE also answered the Title VI and Title VII discrimination claims (Counts I and II) against it, asserting eight affirmative defenses. [184]. Pursuant to Rule 12(f), Plaintiff moves to strike Affirmative Defenses 3, 6, 7 and 8. [186]. In response, BOE withdrew Affirmative Defense 7. [190] at 2. Then, in reply, Plaintiff withdrew its request for punitive damages against BOE, [196] at 2, which moots Plaintiff's motion to strike Affirmative Defense 6. That leaves only Affirmative Defenses 3 and 8.

A Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). An affirmative

---

[10] BOE also argues that the Complaint fails to allege a plausible Title I ADA discrimination claim. [177] at 13–15. Because Plaintiff did not file a timely EEOC charge, the Court need not address this alternative argument.

defense must satisfy three criteria to survive a motion to strike pursuant to Rule 12(f): (1) it must constitute a proper affirmative defense; (2) it must meet pleading requirements in Rules 8 and 9; and (3) it must withstand a Rule 12(b)(6) challenge. *See Raquet v. Allstate Corp.*, 348 F. Supp. 3d 775, 781 (N.D. Ill. 2018). Although motions to strike "are generally disfavored because of the likelihood that they may only serve to delay proceedings," a court may strike portions of a pleading if it will "remove unnecessary clutter from the case" and thereby "serve to expedite, not delay." *Heller Fin. Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

### A.    Affirmative Defense 3

Affirmative Defense 3 states: "All decisions relating to Plaintiff's employment were made in good faith and based on legitimate, non-discriminatory, and non-retaliatory reasons." [184] at 13. Plaintiff argues that BOE fails to adequately plead "good faith" and, regardless, good faith does not constitute an affirmative defense to a Title VI or Title VII claim. [186] at 2.

In response, BOE fails to address Plaintiff's argument, but instead insists that "good faith" remains a viable affirmative defense for § 1983 claims. [190] at 3. The Complaint, however, does not assert a § 1983 claim against BOE. Further, as Plaintiff correctly notes, BOE merely asserts "good faith" in conclusory fashion. *See* [184] at 13. If by "good faith" BOE just means that it had "legitimate non-discriminatory or non-retaliatory business reasons" for its actions, *id.*, that constitutes a defense rather than an affirmative defense, and BOE already asserted this defense its response and denials to Complaint's allegations. *See, e.g.,* [184] ¶¶

28

1–20 (Answers).  Accordingly, the Court strikes BOE's Affirmative Defense 3.  *Cf. Renalds v. S.R.G. Restaurant Grp.*, 119 F. Supp. 2d 800, 804 (N.D. Ill. 2000) (striking a "good faith" affirmative defense to a discrimination claim as inappropriate and redundant).

### B.    Affirmative Defense 8

Plaintiff also moves to strike Affirmative Defense 8, which states: "To the extent sued in their individual capacities, each of the named Defendants were acting in their discretionary capacity as a government official and did not violate clearly established law such that she is entitled to qualified immunity from suit under 42 U.S.C. §1983."  [184] at 13; [186] at 3. Again, BOE argues that it asserted this affirmative defense because qualified immunity remains a valid affirmative defense to a § 1983 claim. [190] at 4.  But, again, Plaintiff does not bring a § 1983 claim against BOE.  BOE does not identify any case that recognizes qualified immunity as a viable affirmative defense to Title VI or Title VII claims, the only claims that Plaintiff brings against BOE.  Thus, the Court strikes Affirmative Defense 8.

## IV.    Conclusion

For the foregoing reasons, the Court denies CTU's motion to dismiss [168] and grants in part, and denies in part, the joint motion to dismiss by BOE, Randle-Robbins, and Orozco-Garcia, [176].  Namely, it dismisses with prejudice all the claims against Orozco-Garcia (Counts V, VI, VII); the § 1983 equal protection claim against Randle-Robbins (Count V) based upon retaliation, only; and the ADA Title I and Title II discrimination claim against BOE (Count VIII).  The Court also grants in part, and denies in part, Plaintiff's motion to strike BOE's affirmative defenses, [186], and strikes Affirmative Defenses 3, 7 and 8 as to BOE.

The following claims may proceed: (1) Counts I, II, and III against BOE; (2) Count IV against CTU; and (3) Count V § 1983 equal protection claim against Randle-Robbins based on a discrimination theory, only.

Dated: January 25, 2023

Entered:

John Robert Blakey
United States District Judge